UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

UNITED STATES OF AMERICA

             -against-

ALBERTO FIGUEROA,

                  Defendant.
--------------------------------------------------------X

**MEMORANDUM & ORDER**

00 CR 778-1 (RJD)

DEARIE, District Judge.

Defendant Alberto Figuero, currently serving a twenty-five year prison term for his role as the leader of "La Banda," a violent, large-scale drug distribution gang, moves for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2). The motion purports to implicate a recent amendment to the United States Sentencing Guidelines ("USSG"). In 2010, following Congress's passage of the Fair Sentencing Act, which reduced the 100:1 powder/crack cocaine sentencing disparity to 18:1, the Sentencing Commission amended the Guidelines applicable to crack cocaine by raising the quantities of crack required to trigger each base offense level. See USSG App. to Supp. C, amend. 750 (effective Nov. 1, 2010, made permanent Apr. 6, 2011, and made retroactive Nov. 1, 2011); see also Pub. L. No. 111-220, 124 Stat. 2372 (2010).

As defendant's sentence was not "based on" the Sentencing Guidelines at all, let alone the specific Guidelines for crack cocaine offenses, however, he is ineligible for a reduction. Therefore, his motion is denied.

## I. BACKGROUND

On July 11, 2003, on the eve of trial, defendant pleaded guilty to two counts of a fifteen-count indictment: RICO activities, in violation of 18 U.S.C. §§ 1962(c), (d), and conspiracy to distribute and possession with intent to distribute crack and powder cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and 1962(c). Defendant pleaded pursuant to an agreement governed by

Fed. R. Crim. P. 11(c)(1)(C), which provided that "a specific sentence of 25 years (300 months) [wa]s the appropriate disposition of the case." See ECF Docket # 310, Exhibit ("Ex.") 1, Plea Agreement at 3. The agreement did not reference a Guidelines range in delineating the agreed-upon term of incarceration.[1] See id. On June 11, 2003, the Court accepted the plea agreement. ECF Docket # 211, 6/11/2003 Transcript of Pleading; see Fed. R. Crim. P. 11(c)(3)(A) ("To the extent the plea agreement is of the type specified in [Rule 11(c)(1)C)], the court may accept the agreement, reject it, or defer a decision until the court has reviewed the presentence report.").

At the outset of defendant's sentencing on July 13, 2005, this Court made clear that "[t]he issue principally before me today is whether or not I am prepared to accept [the agreed to disposition and sentence of 25 years] as a reasonable sentence under the criteria . . . set forth in [18 U.S.C.] 3553." 7/13/2005 Sentencing Tr. at 3. Despite defendant's acknowledged leadership role in "La Banda" and defense counsel's concession that "there [wa]s no question" that defendant committed murder in furtherance of the racketeering activity, both defendant and the government—in their submissions and at the hearing—urged the court to accept the agreed upon sentence as reasonable based upon factors including, but not limited to, the circumstances surrounding the murder, defendant's acceptance of responsibility, his age, education, family, and potential contribution to society, and the savings to the government as a result of the guilty plea and global disposition of defendant's and co-defendants' cases. See Sentencing Tr. at 4-10; ECF Docket # 242-43, Sentencing Memoranda. The Court accepted these arguments and determined that "a sentence of [25 years] . . . does not in any way undermine the seriousness of [defendant's]

---

[1] The agreement itself indicates that neither party knew whether the agreed-upon sentence would be within or outside the guideline range ultimately calculated. See Plea Agreement at 3 ("*In the event the agreed-upon sentence is below the adjusted offense level* under the Sentencing Guidelines calculated by the court, the defendant and the [Government] consent to such a departure . . . .") (emphasis added).

behavior and provides an adequate punishment and deterrence." Sentencing Tr. at 12-13. The Court, therefore, "impose[d] the sentence, as agreed to by the parties." Id. at 13.

On July 14, 2008, defendant moved for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) based on a 2007 amendment to the crack cocaine guidelines, which reduced by two levels each of the base offense levels associated with certain quantities of crack cocaine. ECF Docket # 254, 7/14/2008 Defense Motion; see USSG App. to Supp. C, amend. 706 (effective Nov. 1, 2007) and amend. 713 (making amend. 706 retroactive, effective Mar. 3, 2008); USSG § 1B1.10(c). This Court denied the motion, holding that "having accepted the stipulated plea agreement, [the Court] is without authority to modify it," and that in any case, defendant would be ineligible for a sentence reduction because the amendment "d[id] not have the effect of reducing the guideline range." ECF Docket # 301, 8/18/2009 Order Denying Motion for Sentence Reduction (citing USSG § 1B1.10(a)(2)(B)). The Court's denial of defendant's application was affirmed on appeal. ECF Docket # 309, 6/13/2011 Mandate of USCA.

The Sentencing Commission then again retroactively amended the guidelines relating to crack offenses in 2010 and the Supreme Court clarified that "defendants who enter into plea agreements that recommend a particular sentence [under Rule 11(c)(1)(C)] . . . *may* be eligible for relief under §3582(c)(2)," Freeman v. United States, 131 S. Ct. 2685, 2690 (2011) (plurality opinion) (emphasis added). This motion followed.

## II. DISCUSSION

"The Supreme Court . . . [has] explained that § 3582(c)(2) permits a 'limited adjustment to an otherwise final sentence' . . . and set forth a 'two-step inquiry' for resolving motions for a reduction in sentence pursuant to this provision." United States v. Mock, 612 F.3d 133, 136-37 (2d Cir. 2010) (quoting Dillon v. United States, 130 S. Ct. 2683, 2690-91 (2010)). "First, the

defendant in question must be *eligible* for a reduction in sentence." Id. at 137 (emphasis in original). To be eligible for a reduction, a defendant's sentence must be "based on a sentencing range that has subsequently been lowered by the Sentencing Commission," and "such a reduction [must be] consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); see Dillon, 130 S. Ct. at 2691 (holding that, in sentence modification proceedings based upon the crack cocaine amendments, § 1B1.10 conclusively and *mandatorily* "determines [a] prisoner's eligibility for a sentence modification and the extent of the reduction authorized").

In Freeman v. United States, a fractured Supreme Court resolved a circuit split over "whether defendants who enter into 11(c)(1)(C) agreements that specify a particular sentence may be said to have been sentenced 'based on' a Guidelines sentencing range, making them eligible for relief under § 3582(c)(2)." 131 S. Ct. at 2691. In answering affirmatively, a plurality of the Court held that "§ 3582(c)(2) modification proceedings should be available to permit the district court to revisit a prior sentence to whatever extent the sentencing range in question was a relevant part of the analytic framework the judge used to determine the sentence or approve the agreement." Id. at 2692-93. Justice Sotomayor's narrower concurrence,[2] however, only permits a sentencing court to reduce a sentence imposed pursuant to a Rule 11(c)(1)(C) agreement if the "agreement expressly use[d] a Guidelines sentencing range applicable to the charged offense to establish the term of imprisonment, and that range is subsequently lowered by the [Sentencing Commission]," Freeman, 131 S. Ct. at 2695 (Sotomayor, J., concurring). Because the crack Guidelines were not a "relevant part of the analytic framework," Id. at 2693, let alone "expressly

---

[2] It is well-settled under Marks v. United States, 430 U.S. 188 (1977), that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." Id. at 193 (internal citation and quotation marks omitted).

used" for computing defendant's sentence, Id. at 2695 (Sotomayor, J., concurring), defendant's sentence was not "based on" the Sentencing Guidelines for purposes of Section 3582(c)(2). Mr. Figueroa is thus ineligible for a sentence reduction.

First, defendant's plea agreement did not "use a Guidelines sentencing range that has subsequently been lowered by the Sentencing Commission to establish the term of imprisonment." Id. at 2699. Defendant's plea agreement did not "use" any "Guidelines sentencing range" at all. Id. Indeed, the agreement draws a sharp distinction between "the agreed-upon term of incarceration," which would not be "governed by" the Guidelines, and the remainder of "defendant's sentence," ostensibly including fines, supervised release, and assessments, which would. Plea Agreement at 3. Second, whereas in Freeman, "the [sentencing] hearing proceeded as if the agreement did not exist," defendant's sentencing hearing proceeded as if the *Guidelines* did not exist. Freeman, 131 S. Ct. at 2693. Prior to the hearing, the Court did, of course, review the Guidelines and defendant's pre-sentence report ("PSR").[3] Nevertheless, defendant's sentencing hearing focused exclusively on the plea agreement and the reasonableness of the agreed-upon term of incarceration under Section 3553, and was devoid of any discussion of the Guidelines. Though reviewed, the Guidelines were not used "as the beginning point to explain the [Court's] decision to deviate from it." Id., at 2692.

Yet even if the Court had used the Guidelines as a "framework or starting point . . . for the [Court]'s exercise of discretion" in this case, id., defendant would still be ineligible for a reduction under Section 3582(c)(2). This is because the amendment to the *crack* Guidelines "does not have the effect of lowering the defendant's applicable guideline range because of the operation of another guideline or statutory provision." USSG § 1B1.10, comment. n.1(A).

---

[3] In its written judgment, the Court also ultimately "adopt[ed the PSR]'s guideline applications without change," Judgment, Statement of Reasons at 1, though clarified that the "specific sentence [wa]s imposed . . . pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure," id. at 3.

If defendant's sentence had, in fact, been "based on" any Guidelines at all, his sentence would have been "based on" the first-degree murder Guideline and not the crack cocaine Guidelines. The records of defendant's June 2003 guilty plea and July 2005 sentencing confirm that the principle issue for determination of sentence was defendant's admitted shooting of Eduardo Rose, a rival drug dealer, in the course of the conspiracy. See 6/11/2003 Transcript of Pleading at 48-53, 56-66; Sentencing Tr. at 5-6, 9, 11-12. The racketeering Guidelines applicable to defendant's plea to Count I instruct a court to "treat each underlying offense as if contained in a separate count of conviction," USSG § 2E1.1, comment. n. 1, and then apply "the offense level applicable to [that] underlying racketeering activity," id. § 2E1.1(a)(2). Among defendant's several "underlying offense[s]" was conspiracy to commit murder and first degree murder, both of which are governed by USSG § 2A.1.1, with a corresponding base offense level of 43. Likewise, the crack cocaine Guidelines applicable to defendant's plea to the drug crimes in Count III also direct a Court to apply USSG § 2A1.1 "[i]f a victim was killed under circumstances that would constitute murder . . . ." Id. § 2D1.1(d)(1); see also id. § 1B1.3(a)(1)(A) ("[T]he base offense level . . . shall be determined on the basis of . . . all acts . . . committed . . . by the defendant . . . that occurred during the commission of the offense of conviction . . . ."). Any reference to the crack cocaine Guidelines—and there was none—in computing the sentencing range "applicable" to defendant, therefore, would have been an empty gesture in a process leading to an unrelated result.

In sum, because defendant's offense level "was based on the guideline for first degree murder under U.S.S.G. § 2A1.1 and not on the type and quantity of the drugs involved in the crimes of conviction, he cannot benefit from the amendment to the crack guideline." United States v. Tyler, No. 01-CR-922, 2008 WL 925126, at *2 (E.D.N.Y. 2008) (Weinstein, J.), aff'd

328 F. App'x. 735 (2d Cir. 2009); see also United States v. McMillan, No. 94-CR-01179(FB), 2012 WL 1344830, at *1 (E.D.N.Y. Apr. 18, 2012) (Block, J.) ("Contrary to [defendant]'s argument, his sentence was not 'based on' § 2D1.1. simply because in this case § 2A1.1 was reached by cross-reference from the crack cocaine guideline."); Martin v. United States, Nos. 09 Civ. 2337(BMC), 03 Cr. 0795-1(BMC), 2011 WL 6766897, at *1 (E.D.N.Y. Feb. 16, 2011) (Cogan, J.) (holding defendant ineligible for sentence reduction where defendant's "guideline range was calculated pursuant to his responsibility for a drug-related homicide," and not the crack Guidelines).

Accordingly, even if the Court had based defendant's sentence, in part, on the since-amended Guidelines, "[a] reduction the defendant's term of imprisonment" would not be "authorized under 18 U.S.C. § 3582(c)(2)." Id. § 1B1.10(a)(2).

### III. CONCLUSION

For the reasons given above, defendant's motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(2) is denied.


SO ORDERED.

Dated: Brooklyn, New York
      July 18, 2012                          s/ Judge Raymond J. Dearie

                                           _____
                                           RAYMOND J. DEARIE
                                           United States District Judge